AF Approval _*TLK for JAM*_                                  Chief Approval _~~DM~~_

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO.   8:25-cr-00296-VMC-CPT

MOHAMAD JIHAD FAKIH

## **PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory

W. Kehoe, United States Attorney for the Middle District of Florida, and the

defendant, Mohamad Jihad Fakih, and the attorney for the defendant, Mark

O'Brien, mutually agree as follows:

### A.    **Particularized Terms**

### 1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the

Information.  Counts One charges the defendant with Conspiracy to Commit Wire

Fraud, in violation of 18 U.S.C. § 1349.  Count Two charges the defendant with

Attempt to Export a Stolen Motor Vehicle, in violation of 18 U.S.C. § 553(a).

### 2.    Maximum Penalties

Count One carries a maximum sentence of 30 years' imprisonment, a

fine of $1,000,000.00, or twice the gross gain caused by the offense, or twice the gross

loss caused by the offense, whichever is greater, a term of supervised release of not

more than five years, and a special assessment of $100 per felony count.

Defendant's Initials _MF_

Count Two carries a maximum sentence of 10 years' imprisonment, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100 per felony count.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.   Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:     Two or more people agreed to try to accomplish a common and unlawful plan to commit wire fraud;

Second:    The defendant knew about the plan's unlawful purpose and voluntarily joined in it;

Third:     A violation of wire fraud requires:

  i.     The defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

  ii.    The false pretenses, representations, or promises were about a material fact;

  iii.   The defendant acted with the intent to defraud; and

  iv.    The defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

Defendant's Initials  M.F.                2

The elements of Count Two are:

First:      The defendant knowingly attempted to export a motor
            vehicle; and

Second:     The defendant knew the motor vehicle was stolen.

4.      Indictment Waiver

Defendant will waive the right to be charged by way of indictment

before a federal grand jury.

5.      No Further Charges

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

6.      Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full

restitution to Westlake Financial and Navy Federal Credit Union.

7.      Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will

recommend to the Court that the defendant be sentenced within the defendant's

applicable guidelines range as determined by the Court pursuant to the United States

Sentencing Guidelines, as adjusted by any departure the United States has agreed to

recommend in this plea agreement. The parties understand that such a

Defendant's Initials MF                3

recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant

Defendant's Initials ___  4

agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

     9.   <u>Cooperation - Substantial Assistance to be Considered</u>

       Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the

Defendant's Initials _MF_      5

defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

Defendant's Initials _MC_                6

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

Defendant's Initials _MC_                7

(4)    The government may use against the defendant the

defendant's own admissions and statements and the information and books, papers,

documents, and objects that the defendant has furnished in the course of the

defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty

pleas to those counts to which defendant hereby agrees to plead in the instant case

but, in that event, defendant will be entitled to the sentencing limitations, if any, set

forth in this plea agreement, with regard to those counts to which the defendant has

pled; or in the alternative, at the option of the United States, the United States may

move the Court to declare this entire plea agreement null and void.

11.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and

voluntarily any and all assets and property, or portions thereof, subject to forfeiture,

pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(5), and 28 U.S.C. § 2461(c), whether in

the possession or control of the United States, the defendant or defendant's

nominees. The assets to be forfeited specifically include, but are not limited to, the

$372,000 in proceeds the defendant admits he obtained as the result of the

commission of the offense(s) to which the defendant is pleading guilty. The

defendant acknowledges and agrees that: (1) the defendant obtained this amount as a

result of the commission of the offense(s), and (2) as a result of the acts and

omissions of the defendant, the proceeds have been transferred to third parties and

cannot be located by the United States upon the exercise of due diligence. Therefore,

Defendant's Initials ⟨signature⟩          8

the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

Defendant's Initials _MF_                9

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials _ML_                    10

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _MP_                    11

**B.**    **Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _MK_                    12

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is

pleading provide(s) for imposition of a term of supervised release upon release from

imprisonment, and that, if the defendant should violate the conditions of release, the

defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction,

a defendant who is not a United States citizen may be removed from the United

States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court

and the United States Probation Office all information concerning the background,

character, and conduct of the defendant, to provide relevant factual information,

including the totality of the defendant's criminal activities, if any, not limited to the

count(s) to which defendant pleads, to respond to comments made by the defendant

or defendant's counsel, and to correct any misstatements or inaccuracies.  The

United States further reserves its right to make any recommendations it deems

appropriate regarding the disposition of this case, subject to any limitations set forth

herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii),

the defendant agrees to complete and submit to the United States Attorney's Office

Defendant's Initials _MP_                    13

within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared

Defendant's Initials _MC_                    14

by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials _MC_           15

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials ᒲᑌᑭ                 16

satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials MK    17

## FACTS

I.    Introduction

The defendant, Mohamad Jihad Fakih, was a naturalized United States citizen residing in the Middle District of Florida.

Interstate Auto Traders, Inc. ("Interstate Auto") was a car dealership located in Tampa, Florida.

Unnamed Coconspirator 1 ("UCC-1") was a United States citizen residing in the Middle District of Florida.

Victim Company 1 was an automotive financing company headquartered in Los Angeles, California.

Victim Company 2 was a federally insured and chartered credit union headquartered in Vienna, Virginia.

Straw Purchaser 1 was a United States citizen residing in the Middle District of Florida.

Straw Purchaser 2 was a United States citizen residing in the Northern District of Georgia.

Straw Purchaser 3 was a United States citizen residing in the Middle District of Georgia.

II.    Overview of Wire Fraud Conspiracy

Beginning in or around November 2024, and continuing through in or around February of 2025, in the Middle District of Florida, and elsewhere, the defendant conspired with others to commit wire fraud by obtaining fraudulent loans

Defendant's Initials _MF_                    18

from automotive financing companies. The defendant and UCC-1 worked together to identify straw purchasers with strong credit scores to purportedly purchase vehicles from the defendant, doing business as Interstate Auto. The straw purchasers, acting at the direction of the defendant and UCC-1, either would apply for automotive financing from Victim Company 1 directly online through Interstate Auto's website, or obtain a promissory note from Victim Company 2. In some instances, UCC-1 would apply for financing on Interstate Auto's website, pretending to be the straw purchaser and inputting false ~~v material~~ information on their behalf. * In order to make the loan application appear legitimate, the defendant and UCC-1 would obtain false vehicle titles to correspond with the vehicle that the straw purchaser purportedly was purchasing from Interstate Auto. The defendant and UCC-1 also would obtain and submit forged identification documents and paystubs to support the straw purchaser's financing application.

As part of the scheme, the defendant and UCC-1 would split the proceeds obtained from the victim companies among themselves and the straw purchaser. The straw purchaser was expected to use some portion of their share to make a few initial payments on the loan to make it appear legitimate. After the straw purchaser made those initial payments, the defendant and UCC-1 would report the vehicle stolen to obtain an insurance loss on the vehicle. In some instances, the defendant and his coconspirators attempted to export and exported the vehicles for which financing from the victim companies had been obtained.

* In all instances, the loan applications were transmitted in interstate commerce.

Defendant's Initials _MF_

19

RA
8/19/25

MF
8/19/25

MF
8/19/25

In total, the defendant repeated this scheme for at least six vehicles in the amount of at least $372,000.

III.    Example #1 of Wire Fraud

On December 18, 2024, UCC-1, acting in concert with and at the direction of the defendant, submitted an online automobile loan application for a 2022 GMC Sierra VIN ending 225955 through Interstate Auto's website on behalf of Straw Purchaser 1, a United States citizen residing in the Middle District of Florida. In submitting the application, UCC-1 and the defendant agreed that they would falsely disclose Straw Purchaser 1's income as $20,000 per month. The defendant informed UCC-1 via text message that the defendant, doing business as Interstate Auto, could obtain approval for Straw Purchaser 1 in the amount of $44,000 from Victim Company 1, which would be paid to the defendant. The defendant and UCC-1 agreed that of the loan amount, the defendant and UCC-1 would keep approximately $21,000, and the rest would be paid to Straw Purchaser 1.

After the defendant received approval for Straw Purchaser 1's automobile loan based on the false loan application, the defendant requested proof of income and three references from UCC-1 to secure the loan from Victim Company 1. UCC-1 provided the defendant with three bogus references to submit to Victim Company 1. UCC-1 also contacted a graphic designer to fabricate a phone bill and bank statements for Straw Purchaser 1. UCC-1 instructed the graphic designer that Straw Purchaser 1's bank statements should reflect that they made between $18,000 and $19,000 each month for the previous three months, receiving deposits from a

Defendant's Initials _MP_              20

bogus LLC associated with UCC-1. The defendant paid the graphic designer approximately $105 for the forged documents via PayPal.

The defendant and UCC-1 also secured a bogus vehicle title for the 2022 GMC Sierra VIN ending 225995 to legitimatize Straw Purchaser 1's loan application. According to title records, on August 3, 2024, the GMC Sierra was registered to UCC-1's nephew, R.S. On December 18, 2024, after the defendant, doing business as Interstate Auto, received Straw Purchaser 1's online application, UCC-1 sent the defendant a text message, stating, "i need to get the title asap." The same day, UCC-1 obtained a duplicate title for the GMC Sierra in the name of his nephew, R.S., from First Pasco Tag Agency LLC, in the Middle District of Florida. UCC-1, acting in concert with the defendant, then transferred the GMC Sierra's title to Straw Purchaser 1.

On January 13, 2025, the defendant and UCC-1 discussed paying Straw Purchaser 1 his share of the loan proceeds and the insurance on the GMC Sierra for two months before reporting it stolen. The defendant and UCC-1 also discussed using Straw Purchaser 1 again to obtain an automobile loan. The same day, Straw Purchaser 1 contacted UCC-1 via text message, indicating that he owed Victim Company 1 approximately $1,000 for the first monthly payment and demanding his share of the payout. The defendant then requested Straw Purchaser 1's vehicle tag and insurance policy information so he could "pay the shit n do a claim in 3 months," referring to filing a false insurance claim for a stolen vehicle.

Defendant's Initials _MF_                21

On January 17, 2025, UCC-1, acting in concert with the defendant, paid Straw Purchaser 1 approximately $5,000 in connection with the fraudulent loan for the GMC Sierra obtained from Victim Company 1.

IV.    Example #2 of Wire Fraud

Straw Purchaser 2, a United States citizen residing in the Northern District of Georgia, obtained an automobile promissory note dated November 12, 2024, from Victim Company 2.

On January 3, 2025, the defendant directed Straw Purchaser 2 to make the promissory note out to Interstate Auto for a 2021 Dodge Charger VIN ending 509550. The same day, Straw Purchaser 2, acting at the direction of the defendant, deposited $60,000 into a Truist Bank checking account ending 4924 belonging to Interstate Auto.

On January 16, 2025, Straw Purchaser 2's vehicle loan with Victim Company 2 ending 1811 reflected that it had been debited in the amount of $60,000. The defendant and Straw Purchaser 2 had agreed that the defendant would pay Straw Purchaser 2 $40,000 for the fraudulently obtained automobile loan.

On January 21, 2025, the defendant sent Straw Purchaser 2 $10,000 via wire transfer from a Truist Bank checking account ending 2818. The defendant sent a screenshot of a payment to Straw Purchaser 2 purportedly reflecting a wire transfer of $30,000 from a Truist Bank checking account ending 2818. The $30,000 payment did not go through. Straw Purchaser 2 then demanded via text message that the balance of $30,000 be paid as follows: $10,000 in cash; $10,000 by cashier's check;

Defendant's Initials _IMP_          22

and $10,000 via wire transfer. Two days later, on January 23, 2025, Straw Purchaser 2 sent the defendant a message, stating, "you been paid and you jus [sic] keep nickel and diming me bro."

V.    Example of Wire Fraud #3

On November 2, 2024, the defendant sent text messages to Straw Purchaser 3, seeking information about parts for a 2021 Lamborghini Urus VIN ending A15258 (the "Urus"). Straw Purchaser 3 indicated that they knew someone at Lamborghini who could provide the information requested.

On November 26, 2024, UCC-1 sent the defendant a text message, stating that he had an interested buyer for the Urus. UCC-1 also inquired about the financing status of the Urus, asking, "how many months it's behind," to which the defendant responded, "over a year." At the time, an automotive finance company held a lien on the Urus.

On December 30, 2024, Victim Company 1 became the lienholder for the Urus, after the defendant, doing business as Interstate Auto, obtained financing for the Urus on behalf of Straw Purchaser 3. The loan was funded in the amount of $91,591.97.

Approximately one week later, the defendant and UCC-1 discussed via text message exporting the Urus to make money. According to U.S. Customs and Border Protection ("CBP") records, the Urus was manifested for export on January 20, 2025, despite Victim Company 1's lien.

Defendant's Initials ___    23

VI.    Attempt to Export Stolen Motor Vehicle

On March 10, 2024, the defendant shared two videos and several photographs of a 2022 Rolls-Royce Cullinan VIN ending 209947 (the "Cullinan") in a group text message chat involving two individuals. The Cullinan bore a Florida dealer tag associated with one of the defendant's automobile businesses. In the group chat, the defendant stated that he had obtained the Cullinan from Straw Purchaser 3. In one of the videos, the Cullinan was being backed into a trailer on the street in front of Straw Purchaser 3's home in the Middle District of Georgia.

On March 23, 2024, the Cullinan was reported stolen to law enforcement.

The next day, on March 24, 2024, the defendant shared photographs via text message of him driving the Cullinan with one of the individuals from the group chat. The individual responded, "Sell it to me," and "I like it a lot."

Three days later, on March 27, 2024, the defendant shared photographs via text message of the Cullinan in a warehouse with the same individual. The photographs also depicted a Mercedes S-Class in the warehouse.

On April 25, 2024, CBP seized a container at the Port of Savannah containing the Cullinan and a 2023 Mercedes S-Class. The container was on board the Maersk Denver, a commercial vessel, and its contents had been falsely manifested as containing a 2016 Kia Forte, a 2011 Nissan Rogue, and a 2011 Nissan Armada. The manifest stated that the container was going to a commercial consignee in Dubai, United Arab Emirates.

Defendant's Initials _MW_        24

Around the same time, the defendant and three other individuals in a group text message chat received Maersk tracking information associated with the shipping container that was seized by CBP. In falsifying the manifest's information, the defendant knew that the Cullinan was stolen and attempted to conceal the container's true contents from law enforcement detection. At the time of seizure, CBP assessed that the Cullinan's MSRP was approximately $460,000.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____    25

13.   Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this __21__ day of __May_____, 2025.

GREGORY W. KEHOE
United States Attorney

_____
Mohamad Jihad Fakih
Defendant

_____
Risha Asokan
Assistant United States Attorney

_____
Mark O'Brien
Attorney for Defendant

_____
Daniel J. Marcet
Assistant United States Attorney
Chief, National Security Section

Defendant's Initials _MF_                    26